# DECISIONS

OF THE

# SUPREME JUDICIAL COURT

OF

## MASSACHUSETTS

---

GLOBE PAPER COMPANY, INC. *vs.* RUSSELL BOX COMPANY.
HOWARD PAPER COMPANY, INC. *vs.* SAME.

Suffolk.  April 2, 1935. — May 3, 1935.

Present: RUGG, C.J., CROSBY, PIERCE, LUMMUS, & QUA, JJ.

*Contract*, Construction, Termination, Performance and breach.

Where an officer of a corporation who had influence with the officials of
a store "got the business" of the store for a seller of boxes, and it was
agreed between the seller and the corporation that the seller should
pay the corporation a certain commission "on all sales obtained
through" the officer or the corporation, but no definite period for
which such agreement was to be effective was determined, the agree-
ment was terminable at the will of either of the parties thereto; and
after the seller had given notice to terminate it the corporation was
entitled to its commission on all goods sold by the seller to the store
upon orders received by the seller previous to the giving of the notice,
whether deliveries upon such orders were made before or after it was
given, but was not entitled to the commission on goods sold upon
orders received after it was given.

BILL IN EQUITY, filed in the Superior Court on February 8,
1933.  Also an action of
CONTRACT.  Writ dated August 8, 1932.
The action and suit were referred to the same person as
auditor and master, respectively, for hearing together, the

auditor's findings to be final. Material facts are stated in the opinion. There was a "finding" for the defendant by *Gibbs*, J., upon the auditor's report in the action. The plaintiff alleged exceptions. By order of the judge, a final decree dismissing the bill was entered in the suit. The plaintiff appealed.

*A. Wasserman*, for Globe Paper Company, Inc.

*J. B. Sly*, for Howard Paper Company, Inc.

*E. C. Moore*, for the defendant.

PIERCE, J. On February 8, 1933, the plaintiff Globe Paper Company, Inc., brought a suit in equity against the Russell Box Company for an accounting and to recover compensation by way of a commission of five per cent on all goods sold by the defendant to The Great Atlantic and Pacific Tea Company (hereinafter called the A. & P.), a customer procured by the plaintiff for the defendant.

The defendant admits that prior to January 9, 1928, it entered into a contract with the plaintiff whereby the plaintiff was to receive a commission on all merchandise sold by the defendant to customers contacted and procured by the plaintiff, but contends that the terms of said contract were reduced to writing by the defendant at the request of the plaintiff and are set forth in a letter dated January 9, 1928, from the defendant to the plaintiff's treasurer, which reads in its portion material to the present issue as follows: "Dear Mr. Goodman: Pursuant to your request of a few days ago, while we were at your home, we give below a statement of our understanding of our relations. You are to receive a commission of 5% on all sales obtained through you or your companies, the Howard Paper Co. and the Globe Paper Co., and Mr. J. R. Clark, with . . . certain exceptions . . . We will furnish you with copies of all invoices and all correspondence relating to your orders. We accede to your desire that the accounts shall be balanced once each month, but desire to make the date the 15th of the month following instead of the 10th. Trusting the above confirms your understanding of our discussion, we are . . . ." As charged in the plaintiff's bill of complaint, the defendant in its answer admits that "the plaintiff did

contact and procure customers who purchased merchandise from the defendant directly or through the plaintiff," and "That under said contract the duty was on the defendant to submit to the plaintiff a monthly statement of the account setting out all the orders placed by the customers procured by the plaintiff for the defendant." The defendant denied that it failed "to submit to the plaintiff any accounting of such purchases"; alleged that "All commissions due on any purchases made from the defendant by customers procured or contacted by the plaintiff during the existence of the contract [above quoted] . . . have been paid"; admitted that the items and figures on which an accounting may be ascertained are peculiarly within its knowledge; and alleged that on May 2, 1929, the contract above quoted was terminated by a letter written by the defendant to the plaintiff, its agents or servants, and that nothing is now due from the defendant to the plaintiff.

On July 22, 1932, the defendant brought an action against the Howard Paper Company, Inc., and on August 8, 1932, the defendant in that action brought an action concerning the same subject against the present defendant. The action of the Howard Paper Company, Inc., is brought for the alleged breach of the same contract upon which the Globe Paper Company suit is founded, dated January 9, 1928, with the difference that the Howard Paper Company, Inc., in its action seeks to recover commissions alleged to be due the plaintiff on said contract from the defendant, as the result of sales of paper boxes by the defendant to the First National Stores Inc., between May 2, 1929, and the date of the writ, August 8, 1932. The defendant's answer consisted of a general denial and a plea of payment. The action was referred to an auditor with a provision "that the findings of fact shall be final." On February 17, 1933, the suit in equity was referred to the same attorney as master "to hear the parties, find the facts and report his findings to the court, together with such questions of law, arising in the course of his duty, as any party may request." This order provided that "Case to be tried with case No. 281,781, Howard Paper Company

*v.* Russell Box Company." The auditor and master duly filed reports in the above entitled action and suit on April 6, 1934, and April 25, 1934, respectively. On the auditor's report, after hearing the judge "found" for the defendant and the plaintiff duly excepted. To the master's report there were no exceptions and a motion was made to confirm that report. No interlocutory decree to that end appears to have been filed, but a final decree was entered dismissing the bill with costs. The appeal here is to the entry of the final decree.

Certain facts are common to the action at law and suit in equity. The Howard Paper Company, Inc., and the Globe Paper Company, Inc., are Massachusetts corporations engaged in the business of selling paper and cardboard boxes and similar goods at wholesale. Joseph Goodman was treasurer and director and controlled both of the plaintiff corporations. He was duly authorized to act for each corporation in the making of the alleged contract with the defendant. The defendant is a Massachusetts corporation engaged in manufacturing and selling paper and cardboard boxes. Harlow M. Russell was director, president and treasurer of the defendant company. He made the contract with the Howard Paper Company, Inc., and the Globe Paper Company, Inc., and was authorized to act for the defendant company. In 1926, Goodman and Russell had a conference with the result that the Howard Paper Company, Inc., got the business of the First National Stores Inc. At this conference Goodman "said that he [Goodman] was in a position to get Russell a lot of First National business, both in the type of boxes Russell had been selling them and also new kinds of boxes not previously sold to the First National Stores by Russell." At this meeting the parties did not agree as to any commission or compensation to be paid Goodman for his services. At a conference in August, 1926, between Goodman (representing the Globe Paper Company, Inc.) and Russell, Goodman told Russell "that he had connections with the Great Atlantic and Pacific Company and could get that

business for Russell." The conference resulted in the Globe Paper Company, Inc., getting the business of the A. & P.

At this time the arrangement was that on orders received by the Russell Box Company for the First National Stores Inc. Russell was to bill the goods to the Howard Paper Company, Inc., and this company was to bill them to the First National Stores Inc. and charge the First National Stores Inc. two per cent for its services. We infer that the same arrangement existed between the Globe Paper Company, Inc., and the Russell Box Company, that is, that when orders were received by the Russell Box Company, it was to bill the goods to the Globe Paper Company, Inc., which, in turn, would bill them to the A. & P. when that company should receive the merchandise from the Russell Box Company. The Russell Box Company received orders from the A. & P. because of Goodman's work on account of the Globe Paper Company, Inc., in October, 1926, and we assume bills were rendered to the Globe Paper Company, Inc., and rebilled by that company plus two per cent to the A. & P. until April, 1927.

In December, 1926, Goodman and Russell had a conference at which it appeared that the First National Stores Inc. was not satisfied with the arrangement whereby the goods manufactured for it by the Russell Box Company were billed to the Howard Paper Company, Inc., and rebilled by it to the First National Stores Inc., and it was agreed that the Howard Paper Company, Inc., should "supervise generally through Goodman the business of the Russell Company with the First National Stores." Thereafter the rate of commission to be paid by the Russell Box Company to the Howard Paper Company, Inc., was five per cent on all shipments to the First National Stores Inc., with certain exceptions not here material. Respecting the Globe Paper Company, Inc., and the A. & P., it was agreed in August or September, 1926, that Goodman should "supervise the Russell business with the A & P and receive" a commission of two per cent. In April, 1927, it was agreed that the commission for such supervision should be five per

cent instead of two per cent beginning April 1, 1927. It is to be noted that the commission of Goodman for supervision in behalf of the Globe Paper Company, Inc., on April 1, 1927, was put on the same footing as the commission of the Howard Paper Company, Inc., which became effective in December, 1926, and that the duties in each case were those of supervision.

During 1927 and 1928, Goodman, Russell and one Sooy, a manager for the defendant company, discussed the amount of the commissions to be paid the plaintiffs and on January 9, 1928, had a conference, with the result that the letter, above quoted, was written by the defendant to the plaintiffs' agent which states, as the master and auditor finds, all the essential elements of the contract as it existed from that date on. It is to be noted that no agreement set out in the record between the defendant and either plaintiff makes any provision as to the time the contract should run. The letter dated January 9, 1928, was not answered by the plaintiffs or by either of them, orally or in writing. No statement was made by either of them that the letter was inaccurate or incomplete, and no complaint was made by Goodman to Russell.

"The nature of the services performed by Goodman was to make the contacts and get the chain stores to give business to the Russell Company. Goodman was not a salesman employed by Russell. After the business was obtained the employees of the Russell Company were to follow it up and get the specific orders. On one or more occasions Goodman conferred with officials of the chain stores and the plaintiff [defendant?] in regard to price. In short, Goodman had or was supposed to have influence with the officials of the chain stores who decided to what box companies their business was to go. Goodman did a lot of effective work in getting the business. He was the person who got the business for Russell. Russell had tried and failed."

On May 2, 1929, the defendant sent Goodman a letter which reads: "The understanding we had with you something over a year ago as confirmed in our letter to you of

January 9, 1928, a copy of which is attached is discontinued effective today." Russell intended this letter as a notice of the immediate termination of the contract with both companies (the Howard and the Globe), and, further, did not intend to pay any more commissions on goods shipped after that date. At the time this letter was sent Goodman was ill and away from Boston. The record does not disclose when or where the letter was in fact received by him. There had not been any letter or interview between him and Russell immediately preceding this letter of May 2, 1929. After the receipt of the letter by the Howard Paper Company, Inc., and the Globe Paper Company, Inc., "The defendant went on as formerly, filling orders received from the First National Stores" and from the A. & P. On September 21, 1929, the Howard Paper Company, Inc., wrote the defendant at Chelsea, Massachusetts, as follows: "We have your statement of September 3rd. Will you kindly call and see Mr. Goodman in regard to this account. . . ." This letter referred to the account of Russell Box Company against the Globe Paper Company, Inc. On October 8, 1929, the Howard Paper Company, Inc., wrote the Russell Box Company as follows: "In reply to your letter of the 4th our Mr. Goodman has a matter which he would very much like to talk over with you and trust that you will make it a point to see him at your earliest convenience." No meeting followed the receipt of these letters, and there is no finding in the record that either plaintiff protested to the defendant about the termination of the contract. The master and auditor finds that Goodman's silence on receipt of the letter of January 9, 1928, and his lack of action on receipt of the letter of May 2, 1929, "are not explained." In both capacities he further finds in substance that the letters of September 21, 1929, and October 8, 1929, were not meant as a claim by either plaintiff of breach of contract on the part of the defendant. In November, 1929, the Globe Paper Company, Inc., through its bookkeeper, demanded payment of commission on goods shipped by the defendant on May 1, 2 and 3 to the A. & P. This commission amounting to $40.48 was deducted from

the amount owed the defendant and the Globe Paper Company, Inc., sent its check to the Russell Box Company for $415.76. This was the usual way of payment, Globe Paper Company, Inc., and Russell Box Company setting off their mutual accounts.

In each case the contention of the plaintiff is that the defendant is liable for commissions on all goods sold by the defendant to customers procured by the plaintiff for as long as the defendant continues to sell goods to said customers. The defendant's contention is that it was entitled to terminate the contract at any time without legal liability, except as to commissions for goods already delivered. In each case the auditor and master found the plaintiff under the contract might be entitled to recover in four classes of cases: Class "A. Commissions on goods delivered to the First National Stores [or to the A. & P.] before May 2, 1929." As to the claim of the Howard Paper Company, Inc., the auditor finds that the defendant has paid the plaintiff all commissions so earned, and this fact is admitted by the plaintiff's declaration. As to the claim of the Globe Paper Company, Inc., for commissions on goods delivered to the A. & P. under classification A, the master finds, and the finding is not contested, that the defendant has paid the Globe Paper Company, Inc., all commissions earned. Class B. Commissions on goods delivered subsequently to May 2, 1929, on orders received prior thereto. In this classification the auditor finds that the Howard Paper Company, Inc., has been paid all commissions earned. In this classification the master finds that the defendant has paid the Globe Paper Company, Inc., all commissions earned, but finds that the shipments on orders received prior to May 2, 1929, amounted to $5,790.39, and that the commission of five per cent thereon has not been paid. Class C. Commissions on orders received and goods delivered between May 2, 1929, and August 8, 1932 (date of writ), as to the Howard Paper Company, Inc., and February 8, 1933 (date of bill of complaint), as to the Globe Paper Company, Inc. The auditor, in support of the contention of the

Howard Paper Company, Inc., that the notice was unreasonable, found that in point of fact it was unreasonable, and that if as a matter of law the Howard Paper Company, Inc., was entitled to recover on this ground, it was entitled to recover for this period a commission of $4,903.19, as shown by the record. The master finds, respecting the claim of Globe Paper Company, Inc., under this classification, with a like finding as to the reasonableness of the notice, that it would be entitled to a commission of $4,377.41, if as a matter of law it was entitled to any commission under Class C. Class D. The Globe Paper Company, Inc., further claims a commission under the contract for an order alleged to have been given prior to May 2, 1929. This order was taken June 6, 1927, "to be shipped as called for"; the last shipment under this order was March 3, 1928. On October 6, 1929, the defendant received an order for the same class of goods, i.e., "Sunnybrook egg boxes," and the plaintiff contended before the master that the last order was really a completion of the delivery under the order of June 6, 1927. We think the master rightly found that the two orders above described were not in fact one.

On the facts found by the auditor and master neither plaintiff was bound in law to retain Goodman in service. Nor had the plaintiffs the power through him to exercise indefinitely influence upon the officials of the chain stores whose business it was to decide to what box companies their business was to go. Neither of the plaintiffs agreed to supervise and influence orders to be given the defendant for any definite time or, in fact, for any time at all. The defendant on its side, so far as the record discloses, never agreed on the length of time it would employ or make use of the service which the plaintiffs could provide or furnish. The contract which the defendant made with the plaintiffs was unilateral and was revocable at any time before performance by the plaintiffs. *Harper* v. *Hassard*, 113 Mass. 187. *Marble* v. *Standard Oil Co.* 169 Mass. 553, 561. The case at bar is not distinguishable from *Emerson* v. *Ackerman*, 233 Mass. 249. The Howard Paper Company, Inc., con-

tends that the plaintiff "has rendered its complete performance at one time at the very beginning of the agreement, in that it obtained the business" which the defendant desired for the defendant, and contends that its position is supported by the case of *Edmund D. Hewins, Inc.* v. *Marlboro Cotton Mills*, 242 Mass. 282. This last cited case is distinguishable on its facts from the case at bar. In the instant case there was no express agreement on the part of the defendant to employ the plaintiffs or either of them to supervise the procurement of buyers or the solicitation of orders of possible or named customers for any definite period. Nor can such an agreement on the facts be implied. The contract was in its nature one that could be terminated at the will of either party. *Campion* v. *Boston & Maine Railroad*, 269 Mass. 579. *Pisco-Pausata* v. *Oliver Ditson Co.* 276 Mass. 377. The notice, while it terminated the relation between the plaintiffs, severally, and the defendant, nevertheless stood for the determination of compensation due the plaintiffs under their contract. We think the plaintiffs were entitled to receive under their contract a commission as the agreed measure of value of the service rendered; that such commission was to be determined; and that it covered orders received by the defendant prior to May 2, 1929, although delivered subsequently to May 2, 1929. *Brand* v. *Sterling Motor Car Co.* 243 Mass. 303.

In the case of the Globe Paper Company, Inc., these orders and deliveries amounted to $5,790.39 and the Globe Paper Company, Inc., is entitled to recover the sum of five per cent thereof, $289.52, with interest from the filing of the bill of complaint, February 8, 1933. We are of opinion the Globe Paper Company, Inc., is not entitled to receive commissions on the sale of the "Sunnybrook egg boxes," for reasons above stated. We find no error in the order of judgment for the defendant in the action of the Howard Paper Company, Inc. It results that the exceptions of the plaintiff Howard Paper Company, Inc., are overruled, and it further results that the final decree in the suit of Globe Paper Company, Inc., *vs.* Russell Box Company is reversed

and a decree is to be entered for the plaintiff in the sum of $289.52 with interest thereon from February 8, 1933, and costs.

> *In the action at law the exceptions are overruled.*
> *In the suit in equity the decree is reversed.   New*
> *decree for plaintiff to be entered as above ordered.*